UNITED STATES of America, Plaintiff,

v.

Jerome T. SCHIEFEN; Estate of Barbara M. Schiefen; South Lincoln Rural Water System, Inc.; David Schiefen; Krautco, Uninc; See Corp.; Defendants.

No. CIV 94–4243.

United States District Court,
D. South Dakota,
Southern Division.

Sept. 20, 1995.

Steven Gordon Ahrendt, U.S. Attorney's Office, Sioux Falls, SD, for Plaintiff.

Jerome T. Schiefen, Hudson, SD, pro se.

Barbara Schiefen, Hudson, SD, pro se.

South Lincoln Rural Water, Canton, SD, pro se.

David Schiefen, Hartford, SD, pro se.

Krautco, Uninc., Hudson, SD, pro se.

See Corp., for defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, District Judge.

In 1970, Defendant Jerome T. Schiefen [Schiefen] and his wife, Barbara M. Schiefen,[1] borrowed $53,500.00 from the Farmers Home Administration [FmHA], securing payment with a mortgage on real property located in Lincoln County, South Dakota. Schiefen and his wife defaulted on the note and the United States filed suit to foreclose the secured property, as provided by the terms of the promissory note, on October 25, 1994. Doc. 1. The original complaint was returned unserved. Doc. 5.

On January 18, 1995, the United States filed an amended complaint[2] identical to the original complaint with the exception that the government included a claim by the Internal Revenue Service for taxes, interest and penalties owed in the amount of $30,607.20. Doc. 6 at IV. Service of the amended complaint was made on January 20, 1995. Doc. 8, 9 & 10. Schiefen[3] filed an answer to the amended complaint, along with an Affidavit of Revocation and Rescission of Signature, on February 6, 1995. Doc. 12, 13. The United States then filed a Motion to Strike Answer, Doc. 17. A series of motions by both parties followed. The Court will consider them in turn.

---

1. Barbara M. Schiefen died in 1983, and the present action is brought against her estate.

2. A party may amend its pleading once any time before a responsive pleading is filed. Fed. R.Civ.P. 15(a).

3. Defendant Schiefen points out to the Court that he is appearing *in propria persona*, a procedure in which, under former rules, one challenging the jurisdiction of a court represented himself because an attorney was an officer of the court and was presumed to have obtained leave of court in order to plead which admitted jurisdiction. *Black's Law Dictionary* 792 (6th ed. 1990).

## MOTION TO STRIKE ANSWER

█ The United States moves to strike the answer of Defendant Schiefen on three grounds: (1) that the pleadings fail "the mandate that all pleadings be simple, concise, and direct," citing Fed.R.Civ.P. 8(e); (2) that the pleadings fail to state a claim upon which relief can be granted, citing Fed.R.Civ.P. 12(b)(6); and (3) that the pleadings are immaterial, impertinent and scandalous, citing Fed.R.Civ.P. 12(f). Doc. 17. Schiefen filed a Demand to Strike Plaintiffs [sic] Motion to Strike Answer, Doc. 28, and supporting brief, Doc. 29.[4]

Mr. Schiefen's Answer is a lengthy array of defenses to this foreclosure action. Schiefen first pleads that this Court lacks jurisdiction because the United States is bankrupt and may, therefore, not institute civil or criminal actions[5] against anyone. Doc. 12 at I. Schiefen also pleads that this Court lacks jurisdiction over the claim for delinquent taxes, first, because the federal government only has jurisdiction over territories and Schiefen is a citizen of a state,[6] and, second, because the right to labor is a right protected by the Constitution and, therefore, not taxable by the Federal government. Doc. 12 at 4–5. Schiefen also pleads insufficient consideration securing the promissory note which is the subject of this suit because, Schiefen alleges, the FmHA loaned funds by "creating 'money' of INtangible [sic] value by a bookkeeping entry[.]" Doc. 12 at 10. Schiefen's allegations of fraud in the making of the promissory note, impossibility of performance, lack of informed consent in the making of the note, unjust enrichment, and an equal protection violation are, likewise, based on the theory that United States currency is "irredeemable, unbacked paper." Doc. 12 at 10–13. Schiefen further alleges that the contract is unenforceable as unconscionable under South Dakota law, citing S.D.C.L. § 57A–2–302. Doc. 12 at 14. In addition, Schiefen denies signing the promissory note with a bona fide signature.[7]

4. Schiefen's "Demand" is, in essence, simply a resistance to the government's motion and the Court has considered it as such. The Court finds the "Demand" conclusory, without legal basis, and contradictory. Defendant's "Demand" is denied.

5. In addition to his Answer, Defendant has filed a Brief in Support of Lack of Jurisdiction, Doc. 24. The Brief is some 20 pages of discussion of federalism and federal criminal jurisdiction. The Court suspects that Mr. Schiefen is not the original author of the Brief: the first two and last page were produced on a different machine than the middle pages, and the writing style is not Mr. Schiefen's, with which the Court is familiar from the filings in this case.

This Court, as well as other courts, are, from time-to-time, faced with these "stock" filings. See, i.e., Nixon v. Phillipoff, 615 F.Supp. 890, 897 (N.D.Ind.1985) ("Perhaps the most egregious act was Nixon's filing of a thirty-four page "Memorandum of Law." The Memorandum was obviously not written by Nixon—the type is different from all other filings in this case, and more revealing, was written for a "Defendant", not a plaintiff such as Nixon.") and Vaughn v. United States, 589 F.Supp. 1528, 1533 (W.D.La.1984) (citing some seven other cases with identical filings and stating, "It is apparent that these cases are not mere isolated incidents with a peculiar coincidental similarity. These tax protestors with their mass-produced attachments, complaints, motions and memoranda, all march to a common drummer.").

6. Schiefen argues that the only court having jurisdiction over him is a Common Law Court because he is a "South Dakota Republic Man." Doc. 11 at 6.

7. Mr. Schiefen also appears to be alleging that he was fraudulently induced to sign the promissory note and mortgage, not that his signature is not his signature. Doc. 12 at 15. The alleged fraud appears to be that FmHA is an agency of the federal government and the federal government is not, in Mr. Schiefen's opinion, a legal entity. Defendant misunderstands the concept of federalism. I find the allegation that the United States is not an entity with legal jurisdiction over Mr. Schiefen has no legal basis. The fact is that the federal government has exclusive jurisdiction over some aspects of our daily lives, the States have jurisdiction over other aspects, and some jurisdiction is shared. Mr. Schiefen's refusal to understand that concept does not amount to fraud on the part of others.

Nevertheless, Schiefen has filed with the Court an Affidavit of Revocation and Rescission of Signature and Power of Attorney which attempts to rescind Schiefen's signature on four promissory notes, three of which are noted as paid, and at least one mortgage. Doc. 13. In South Dakota, rescission of a contract is permitted if consent was given by mistake or obtained through duress, fraud, or undue influence. S.D.C.L. § 53–11–2(1) (1990). In addition, rescission must be made promptly, upon discovery of the facts which entitle rescission. S.D.C.L. § 53–11–4 (1990). "Whether the rescinding party acted with due promptness is a question of law." Niel-

Doc. 12 at 15–16. Finally, Schiefen maintains that he is not in default on the note because the annual statement of loan account contains no dollar signs and, therefore, the loan has no value. Doc. 12 at 18 & Ex. A. Schiefen supports his arguments with a number of authorities, cited out of context and misinterpreted. Mr. Schiefen also provided the Court with an Affidavit tracing how he came to understand the theories he propounds. Doc. 11.[8]

The Court finds that Schiefen's Answer is largely unresponsive to the Amended Complaint in this case and does not conform to the requirements of Fed.R.Civ.P. 8(e). I further find that where a bona fide legal theory has been stated (*i.e.*, misrepresentation, unconscionability, lack of jurisdiction), those theories have little legal or factual

basis and are not sufficient to state a claim upon which relief may be granted.[9] Fed. R.Civ.P. 12(b)(6). For example, Schiefen's argument that United States currency is unbacked paper has been rejected by numerous courts. *Nixon v. Phillipoff*, 615 F.Supp. 890, 893–94 (N.D.Ind.1985) (discussing history of federal reserve notes as legal tender). Therefore, the government's Motion to Strike Answer is granted and Defendant's Answer is stricken.

## MOTION FOR PROTECTIVE ORDER

■ In his Answer, Mr. Schiefen requests discovery of several documents which Schiefen contends are necessary to demonstrate the government's jurisdiction over Mr. Schiefen in the instant foreclosure.[10] Doc. 12

---

*sen v. McCabe*, 442 N.W.2d 477, 481 (S.D.1989). This revocation was executed on February 6, 1995. Doc. 13. The promissory note and mortgage were executed on August 14, 1970. Doc. 6, Ex. 1 & 2. Twenty-five years cannot be considered "prompt."

However, the length of time between formation and rescission of a contract is not conclusive; "The further query must be whether the delay was long enough to prejudice the other party." *Kane v. Schnitzler*, 376 N.W.2d 337, 340 (S.D. 1985) (citing 17 Am.Jur.2d *Contracts* § 489 (1964)). South Dakota has not directly addressed the issue of the binding effect of signatures on contracts although the Eighth Circuit has held, "a person who has an opportunity to read a document but signs it without doing so is held to have knowledge of the document's contents, absent a showing of fraud." *U.S. v. Thomas*, 938 F.2d 831, 833 (8th Cir.1991) (applying Missouri law). *See also* 17A Am.Jur.2d *Contracts* § 225 (1991) ("[T]he courts appear to be unanimous in holding that a person ... cannot avoid the contract ... if he signs it without reading it, at least in the absence of special circumstances excusing his failure to read it."). FmHA was entitled to rely upon Defendants' signing of the mortgages. The twenty-five year timespan, combined with the facts that Schiefen did sign the note and mortgage and did make payments on the note, indicates that the delay was sufficiently long enough to prejudice the plaintiff. Plaintiff has also expended substantial amounts of money ($10,575.46 in unpaid real estate taxes and $4861.09 for other expenses) in protection of FmHA interests and in reliance on the instruments signed by Defendants. Doc. 6 at XIV. Mr. Schiefen's attempted rescission is denied.

8. Schiefen states that he has been influenced by, among others, ACRES U.S.A., *Night Came to the Farms of the Great Plains* by Raymond D. North, Dr. Gene Schroder, and *Modern Money Mechan-*

*ics* published by the Federal Reserve Bank. Doc. 11.

9. When considering a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6), "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved inconsistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). A motion to dismiss is construed in favor of the non-moving party, *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)), and it is assumed that all facts alleged in the complaint are true, *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir.1994).

10. Schiefen requested:
(1) the written instrument, signed by the Attorney General, authorizing a civil investigation of Defendant pursuant to 26 U.S.C. § 7401; (2) the written instrument, signed by Defendant, showing his involvement with Alcohol, Tobacco and Firearms pursuant to 26 U.S.C. § 7401; and (3) the foundational instrument, signed by an IRS agent, identifying Defendant as a citizen of the United States subject to ITS [sic] jurisdiction, pursuant to Art. I, § 8, cl. 7, presumably of the Constitution.
Doc. 12 at 9. Discussing Schiefen's first request, § 7401 states:
No civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced.
26 U.S.C. § 7401 (1989). It is clear that the United States Attorney is a delegate of the Attor-

at 9. In a separate filing, Schiefen moves for discovery of an assortment of FmHA, IRS, United States Marshal Service and FBI documents. Doc. 37.[11] The government objects to Schiefen's requests on the grounds that these documents do not exist and requests a protective order or stay of discovery. Doc. 19. Defendant responds with a Motion to Strike Plaintiffs [sic] Motion, Doc. 27.

Defendant's Request for Production of Documents includes items such as:

> If the person that allegedly served the papers is a U.S. Marshal, then he is a part of the U.S. National Central Bureau (U.S. Government Manual), therefore he is representing a foreign agency and must be registered as such, therefore we demand a copy of his foreign registration and a copy of his GREEN CARD.

Doc. 37 at 2. I find these requests are not reasonably calculated to lead to the discovery of admissible evidence. In addition, these requests are burdensome and oppressive, and, in most instances, to be for documents that do not exist and, in some instances, do not make any sense. For this reason, Defendant's request for production is denied. The government's Objection to Request for Production of Documents and Motion for Protective Order, Doc. 19, and Defendant's Demand That Plaintiffs Motion to Strike Request for Admissions and Plaintiff Objection to Request For Admissions be Denied And To Strike Plaintiffs Motion and Request, Doc. 27, are denied as moot.

## MOTION TO DISMISS

■■■ Defendant Schiefen moves to dismiss this action on the grounds that the government has failed to respond to his Request for Admissions, his Request for Production of Documents, and his challenge to jurisdiction. Doc. 38. Schiefen argues that such failure constitutes a default of this ac-

tion. The Court, by this Order, denies Schiefen's Request for Production of Documents for the reasons stated in the previous section.

With regard to Schiefen's Request for Admissions, Doc. 39, such requests are deemed admitted if the party to whom the admission is directed does not object within 30 days. Fed.R.Civ.P. 36(a). The request for admissions is dated February 1, 1995, but was not filed with the Court until March 13, 1995. Because it appears from the Court filings that the Motion to Dismiss was filed by Schiefen at the same time that he filed his Request for Admission, the Motion to Dismiss is premature. In addition, I find that the government received the Request for Admissions sometime after February 1, 1995, the filing date on Docket Entry 39, and filed a timely objection to the Request for Admissions on February 10, 1995. Doc. 21. The admissions are not deemed admitted.

Second, the government moves to strike the request for admissions as premature and as defective in form. Doc. 21. Schiefen filed a Motion to Strike Plaintiffs Motion and Request, Doc. 27, and supporting brief, Doc. 30. Rule 36 provides, in pertinent part, "Without leave of court or written stipulation, requests for admission may not be served before the time specified in Rule 26(d)." Fed.R.Civ.P. 36(a). Rule 26(d) prohibits discovery prior to the planning meeting required by Rule 26(f). No Rule 26(f) meeting has been scheduled due to the pending motion for summary judgment. Doc. 20 at 2. The Court finds that the Request for Admissions is premature and no further response is now required to Defendant's Request for Admissions.

The Court finds that the admissions are not defective in form. A request for admission must set forth its requests in a simple and direct manner which can be admitted or

---

ney General for purposes of § 7401 and the signature of the U.S. Attorney on the amended complaint in this action is sufficient to authorize an action for the recovery of taxes. *United States v. One 1941 Cadillac Sedan*, 145 F.2d 296, 299 (7th Cir.1944). With regard to the remainder of Defendant's requests listed in Doc. 12 at 9, the Court finds them frivolous and does not require the government to respond.

**11.** Defendant's Request for Production of Documents, Doc. 37, and Request for Admissions Under FRCP 36–a, Doc. 39, are both dated February 1, 1995, but were not filed with the Clerk of Courts until March 13, 1995. As the government's responses were filed in the interim, the Court presumes that the government had both requests prior to the filing of the papers with the Court.

denied without explanation. 8A *Wright, Miller & Marcus* § 2258 (1994). The request for admissions substantially follows that format.

■ The rule permitting requests for admissions is "intended to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial, the truth of which is known to the parties or can be ascertained by reasonable inquiry." 8A *Wright, Miller & Marcus* § 2252 (1994). A party may request admission of "the truth of any matters within the scope of Rule 26(b)(1)," Rule 36(a), including admission of facts bearing on the jurisdiction of the court, 8A *Wright, Miller & Marcus* § 2254 (1994). While the scope of Rule 36 is normally extremely broad, I find that these requests are frivolous. The requested admissions deal with a variety of subjects: "That the fringed flag in the United States District Court for the District of South Dakota Southern Division means it is not a Art III court," Doc. 39 at ¶ 10; "That all Federal Judges are unregistered foreign agents." Doc. 39 at ¶ 20; and "The United States Constitution does not allow statutory law," Doc. 39 at ¶ 48. The proposed admissions are outright misstatements of the law, have no relevance to the instant foreclosure action, or are pronouncements of Defendant's political views.[12] The Court grants the government's request to strike the admissions as premature under Fed.R.Civ.P. 36(a), and, as an alternative basis, as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, Rules 36(a) & 26(b)(1). Furthermore, the Motion to Strike is rendered moot by the granting of the government's motion for summary judgment.

12. Defendant Schiefen also submits a document entitled "Judicial Notice of 'Uniform Judicial Notice of Foreign Law Act.'" Doc. 16. A court may take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably by questioned." FRE 201(b). The Court is not permitted to notice "legislative facts" or "those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal princi-

## JURISDICTION

■ Finally, Schiefen's third ground for dismissal is this Court's purported lack of jurisdiction. Schiefen first raises the issue in his Answer, Doc. 12. As previously discussed in this Opinion, Schiefen does not raise any credible argument against jurisdiction in that document.

Nevertheless, Schiefen continues to argue against this Court's jurisdiction, filing a document entitled "Judicial Notice of Lack of Jurisdiction, No Person of Proper Power or Authority To Prosecute or Judge the Case." Doc. 51. In this document, Schiefen states a fanciful argument to the effect that all lawyers belong to the American Bar Association and, because the ABA was formed in Washington, D.C., all lawyers are citizens of Washington, D.C. Because Washington, D.C. is neither a state or a territory, all lawyers are foreign agents and cannot practice law without registering as foreign agents. Defendant reasons that, therefore, judges have no authority to hear this case because they are lawyers. Thus, the United States District Court is without jurisdiction and jurisdiction lies with the Common Law Court. *Id.*

Defendant also filed a number of other papers with the Court in keeping with his stated philosophy. First, Defendant filed a "Notice to Court of Incorrect Mailing" which states, in pertinent part, "Jerome T. Schiefen ... states that he does NOT have a ADDRESS, only a *location*. A address belongs to the Post Office (government), I do not." Doc. 34. Subsequently, Defendant filed a "Notice of Docketing" which includes a "Letter Rogatory Judicial Writ of Mandamus" from "Our One Supreme Court, Country of South Dakota in and for Lincoln County, With Common Law Venue, Original

ple or ruling by a judge or court or in the enactment of a legislative body." Advisory Committee Note to FRE 201. Furthermore, a court should circumvent traditional methods of proof, *i.e.* testimonial evidence subject to cross-examination and rebuttal, only in clear cases. *Id.* Schiefen's request for judicial notice lists some 108 items: primarily United States Supreme Court cases, several U.S.Code and C.F.R. sections, and several legal dictionaries. The Court declines to take judicial notice of these items as case law is subject to interpretation and not an appropriate item for judicial notice.

and Exclusive Jurisdiction." Doc. 36. The writ orders the United States District Court to dismiss the instant case, CIV 94–4243. Defendant then filed a "Letter of Credit" in the amount of $90,000.00 in payment of the alleged claim of FmHA and the IRS. Doc. 41.

Most recently, Defendant filed a document entitled "Affidavit of Refusal Without Dishonor Plaintiff's Motion for Summary Judgment and/or Judgments of the U.S. District Court for the Southern Division of South Dakota." Doc. 58. This document discusses a number of topics, including the relationship between the federal government and the states; the Constitutional oath of office taken by federal judges; the District Court's asserted lack of jurisdiction over this matter as demonstrated by the flying of a fringed flag; an argument that the federal District Courts are Article I courts; a discussion of the interrelationship between statutes and regulations concluding that regulations in general and the C.F.R. Index in particular are controlling authorities of law; and an argument that Defendant is an "American national," not a "taxpayer" and does not earn "income" for purposes of Title 26 of the United States Code. The document concludes that there is no federal law applicable to the instant case and "Jerome T. Schiefen ... is entitled to and does refuse and reject all orders pursuant to this matter issuing from this court." Doc. 58 at ¶ 89. In the document, Schiefen grants the Court and the U.S. Attorney "time deemed reasonable by the court" in which to respond, Doc. 58 at ¶ 94, stating, "Automatic Default will be on record if the U.S. attorneys fail to fully rebut this presentment or remain silent," Doc. 58 at ¶ 97.

Furthermore, Schiefen testifies by Affidavit that on June 8, 1995, he tendered payment of $88,336.28 and $61,214.40 by certified check. Doc. 59. Defendant does not specify to whom the checks were paid or delivered and the Court was not provided copies of these checks, designated Exhibits 6–74 and 6–73. Defendant has also provided the Court with a "Notice and Entry of Default by affidavit," Doc. 61, Ex. 6–70; an "Affidavit of Declaration, Action to Quiet Title," Doc. 61, Ex. 6–72; and an unsigned "Final Judgment,

res judicata by affidavit" which purport to take a default judgment against the FmHA, IRS, and U.S. District Court in the Common Law Court in the present action. Finally, the file contains a certified copy of Schiefen's notice of default judgment against the United States which was published in a Lincoln County, South Dakota, newspaper. Doc. 62.

■ Schiefen's arguments against jurisdiction are entirely without merit. Whether Schiefen wishes to be located by address or location has no bearing on the issues of foreclosure before the Court. Federal jurisdiction is determined by statute, not by whether the flag flown is plain or fringed. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, ——, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994); *Marine Equip. Management Co. v. United States*, 4 F.3d 643, 646 (8th Cir.1993). The Eighth Circuit has repeatedly held that wages are income subject to taxation. *United States v. Gerads*, 999 F.2d 1255, 1256 (8th Cir.1993); *Hayward v. Day*, 619 F.2d 716, 717 (8th Cir.1980). Schiefen's own proclamation from the self-appointed Lincoln County, South Dakota common law court announcing a default judgment against the United States is of no legal effect. No such court exists in Lincoln County, South Dakota. *Gerads*, 999 F.2d at 1257 ("[W]e reject appellants' contention that they are not citizens of the United States, but rather 'Free Citizens of the Republic of Minnesota' and, consequently, not subject to taxation."). Furthermore, a default judgment cannot be obtained against the United States "unless the claimant establishes a claim or right to relief by evidence satisfactory to the court." Fed.R.Civ.P. 55(e). The Court finds that Defendant Schiefen has presented no evidence, but instead has presented political rhetoric which is insufficient to establish a claim of default. Finally, this Court has jurisdiction over the foreclosure of promissory notes signed by Mr. Schiefen as this is a civil action brought on behalf of the United States pursuant to 28 U.S.C. § 1345. *United States v. Van Stelton*, 988 F.2d 70, 70 (8th Cir.1993); *United States v. Belanger*, 598 F.Supp. 598, 603 (Me.1984). Schiefen's various motions to dismiss for lack of jurisdiction are denied on all grounds. Doc. 12, 51.

## MOTION FOR SUMMARY JUDGMENT

The government moves for Summary Judgment, Doc. 43, requesting that the liens held by the Internal Revenue Service and Farmers Home Administration be foreclosed, the property sold, and the proceeds distributed according to law. In addition, the government requests a determination that certain transactions involving the transfer of property from Defendant Schiefen to Krautco Un-inc., Moeco Uninc., Germco Uninc., and See Corp. are either fraudulent transfers under South Dakota law or conveyances to an alter ego. Schiefen responds with a document entitled, "Demand to Strike Motion for Summary Judgment Case is Closed For Failure to Act on March 10, 1995 Demand." Doc. 54.

 The Court must grant a motion for summary judgment if there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[T]rial courts should believe the evidence of the party opposing summary judgment and all justifiable inferences should be drawn in that party's favor." *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir.1992). Federal Rule of Civil Procedure 56(e) requires the non-moving party to "set forth specific facts showing that there is a genuine issue for trial" in order to prevent a grant of the motion. *See Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514 and *JRT, Inc. v. TCBY Systems, Inc.*, 52 F.3d 734, 736 (8th Cir.1995).

 With regard to the FmHA lien, the government has submitted documentation showing Schiefen is in default on a promissory note dated August 14, 1970, and secured by a mortgage of the same date. Doc. 45 at ¶¶ 6, 7. Default is the failure to perform a contractual duty. *Black's Law Dictionary* 417 (6th ed. 1990). The promissory note is itself a promise to pay the principle amount plus interest. Doc. 6 at Ex. 1. Paragraph 15 of the mortgage provides, "Should default occur in the performance or discharge of any obligation secured by this instrument ... the Government may, at its option, with or without any notice ... foreclose this instrument as provided herein or by law[.]" Doc. 6 at Ex. 2.

Mr. Schiefen does not dispute the fact that he is in default on the promissory note. Rather, he reasserts the arguments that this Court has no jurisdiction in these matters because the United States is bankrupt and denying the sovereignty of the federal government. Doc. 54 at I, III. Schiefen also contends that a default judgment has been obtained against the government in the people's court. Doc. 54 at I. Mr. Schiefen's political arguments have already been addressed by this Order. I find that there is no genuine issue of material facts, that Schiefen is in default on the promissory note held by FmHA, and summary judgment is granted as to foreclosure of the FmHA note.

 With regard to the tax liens, "A presumption of correctness normally attaches to the Commissioner's assessment of a tax deficiency." *Caulfield v. Commissioner*, 33 F.3d 991, 993 (8th Cir.1994). A taxpayer bears the burden of proving the assessment arbitrary or erroneous. *Day v. Commissioner*, 975 F.2d 534, 537 (8th Cir.1992). Certificates of Assessments and Payments submitted by the government [13] are "routinely used to prove that tax assessment has in fact been made." *Geiselman v. United States*, 961

---

13. The government has provided copies of the Certificates of Assessment and Payments for Jerome Schiefen for 1983, Doc. 48 at Ex. F; for 1985, Doc. 48 at Ex. P; and for 1986–1992, Doc. 48 at Ex. Q. As a result of the assessments, the government filed tax liens on Schiefen's property for 1983, Doc. 48 at Ex. O; for 1985, Doc. 48 at Ex. R; for 1986, Doc. 48 at Ex. S; and for 1987, Doc. 48 at Ex. T. As a result of an investigation, the government concluded that four corporations and business trusts which Schiefen had set up were his alter egos and filed tax liens against Schiefen's property in the name of each entity for the tax years 1983, 1985, 1986, and 1987. Doc. 48 at Ex. U, V, W, X. The government also filed tax liens against Schiefen and the four entities for the years 1988–1992. Doc. 48 at Ex. Y, Z, Aa, Ab, Ac. Schiefen also acknowledges receipt of a delinquency notice in 1986 in a letter written to the IRS. Doc. 48 at Ex. E.

F.2d 1, 6 (1st Cir.1992) (quoting *Rocovich v. United States,* 933 F.2d 991, 994 (Fed.Cir. 1991)); *Gerads,* 999 F.2d at 1256.

Schiefen has submitted no evidence disputing his failure to pay the assessed taxes. In the absence of such proof, I find that Schiefen has not met his burden of demonstrating that there is a genuine issue of fact on this issue. Summary judgment is granted as to the Internal Revenue Service and the tax liens may be foreclosed.

▇▇▇▇▇▇ The government also asks that certain transfers be declared fraudulent or to an alter ego. The issue is whether Schiefen has rights in property to which the tax lien may attach. At issue are:

(1) A transfer of Schiefen's farm to Krautco Uninc. by quit claim deed, executed on December 31, 1986, and filed on February 10, 1987, without stated consideration, Doc. 48 at Ex. J;

(2) A transfer of personal property, including some seven tractors, an assortment of farm machinery, "household goods, cameras," and 51 head of sheep, from Schiefen to Germco Uninc., by quit claim deed, executed on December 31, 1986, and filed on March 5, 1987, without stated consideration, Doc. 48 at Ex. K;

(3) A lease of real property from Krautco, Uninc. to See Corp., executed on March 16, 1987, for no stated consideration, Doc. 48 at Ex. L;

(4) A lease of personal property from Germco, Uninc. to See Corp. executed on March 16, 1987, for no stated consideration, Doc. 63.

▇▇▇▇▇▇ Fraudulent intent is a question of fact. S.D.C.L. § 54–8A–4. Fraudulent intent may be established by circumstantial evidence. *First Nat'l Bank of Beresford v. Anderson,* 291 N.W.2d 444, 446 (S.D.1980). South Dakota's Uniform Fraudulent Transfer Act lists a number of factors for determining fraudulent intent under the Act:

In determining actual intent ... consideration may be given, among other factors, to whether:

(1) The transfer ... was to an insider;

(2) The debtor retained possession or control of the property transferred after the transferred; ...

(4) Before the transfer was made ... the debtor had been sued or threatened with suit;

(5) The transfer was of substantially all the debtor's assets;

(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred....

S.D.C.L. § 54–8A–4(b) (1990).

▇▇▇▇ The analysis for whether an entity is an alter ego is similar to the analysis for fraudulent conveyances. While the factors are not clearly defined, *Loving Saviour Church v. United States* summarizes the factors used in a number of other cases. 556 F.Supp. 688, 692–93 (D.S.D.1983), *aff'd* 728 F.2d 1085 (8th Cir.1984). Those factors may be summarized as:

(1) The taxpayer exerted extensive, if not absolute, control over the assets of the entity;

(2) Entity funds were used to pay personal expenses;

(3) Personal property was transferred to the entity for little or no consideration;

(4) The taxpayer purchased property, *i.e.,* automobiles, in the name of the entity for personal use.

(5) The assets of the entity were insured in the taxpayers own name; and

(6) There was a close family relationship between the taxpayer and the officers of the entity or other directors were merely figureheads who made no decisions.

*Id.* [14]

Based on the undisputed record before the Court, I find that Schiefen transferred his

---

14. The government also points out the similarity of the factors used for determining whether an entity is an alter ego and those used to pierce the corporate veil in South Dakota:

(1) fraudulent representation by corporation directors;
(2) undercapitalization;
(3) failure to observe corporate formalities;
(4) absence of corporate records;

real and personal property to corporations and trusts of which he is the president. Schiefen's son and daughter are the trustees for the business trusts. I find that Schiefen retained control of the property transferred in that he "rents" the property back from himself; he writes checks for personal items out of the corporate or trust accounts; he continues to live in his home without paying rent; he drives a vehicle owned by one of his business trusts; he personally insures vehicles allegedly owned by a trust; he pays utilities in his own name for property allegedly owned by a trust; and he personally pays property taxes on property held by a business trust. I also find that the transfers to the trusts were contemporaneous with the filing of the tax liens on Schiefen's property by the IRS. Finally, I find that Schiefen transferred essentially all of his property to these business trusts for little or no consideration.

Schiefen's responses to the government's argument for a finding of fraudulent transfer and/or alter ego are conclusory and unsubstantiated. For example, in refuting each paragraph of IRS Revenue Officer Steve Hopkins' affidavit, Schiefen's response to the statement that he continues to live in his farm house transferred to Krautco Uninc. without paying rent, Doc. 48 at 6(23), is, "I live in the house under a agreement, so what?" Doc. 55 at H. Schiefen has failed to produce any credible evidence to contradict my finding that these transfers were for the purpose of avoiding his tax liabilities. Therefore, I find that he transfers of real and personal property from Jerome Schiefen to the business trusts and the leasing back to Schiefen are fraudulent conveyances made with the intent to defraud the government. In the alternative, I find that See Corp. and the three business trusts are alter egos of Jerome Schiefen.[15] The government's motion for summary judgment is granted on all

(5) payment by the corporation of individual obligations; or
(6) use of the corporation to promote fraud, injustice, or illegalities.
*Baatz v. Arrow Bar,* 452 N.W.2d 138, 141 (S.D. 1990).

**15.** Schiefen does make a one-line argument that the conveyances to his business trusts were more than six years ago and are, therefore, barred by

grounds and Schiefen's demand to strike is denied.

## SANCTIONS

The government has requested that it be awarded its cost of suit, including reasonable fees. Motion to Strike Answer, Doc. 17 at 2; Motion to Strike Request for Admissions, Doc. 21 at 1. Sanctions under Fed.R.Civ.P. 11 are appropriate when, applying an "objective reasonableness" standard, the Court determines that "the pleading was frivolous, groundless, or advanced for an improper purpose." *Pulaski County Republican Comm. v. Pulaski Board of Election Comm'r,* 956 F.2d 172, 173 (8th Cir.1992). Schiefen has filed some 24 motions, briefs, notices and demands in addition to a videotape and several booklets regarding his political and other personal views. These pleadings are frivolous and groundless. However, before Rule 11 sanctions can be imposed by motion, Rule 11(c)(1)(A) provides that the motion for sanctions under Rule 11 "shall be made separately from other motions or requests and shall describe the specific conduct alleged to violated subdivision (b)." This procedure was not followed and no sanctions will be imposed. The filing of additional pleadings by Defendant which are frivolous or groundless may result in a show cause hearing brought on the Court's own initiative pursuant to Fed.R.Civ.P. 11(c)(1)(B).

IT IS ORDERED:

(1) That the United States' Motion to Strike Answer, Doc. 17, is granted and Defendant's Answer, Doc. 12, is stricken in its entirety as unresponsive pursuant to Fed.R.Civ.P. 12(f), and as failing to state a claim upon which relief may be granted, pursuant to Fed. R.Civ.P. 12(b)(6). Defendant's De-

the applicable statutes of limitations. Doc. 54 at XI. South Dakota's Uniform Fraudulent Conveyances Act does provide a four-year statute of limitation. S.D.C.L. § 54–8A–9 (1990). However, federal law preempts state law in this instance and 26 U.S.C. § 6501(c) (Supp.1995) provides that taxes may be assessed for fraudulent returns at any time.

888

mand to Strike Plaintiffs Motion to Strike Answer, Doc. 28, is denied.

(2) Defendant's Affidavit of Revocation and Rescission of Signature and Power of Attorney, Doc. 13, is refused.

(3) That Defendant's Request for Production of Documents, Doc. 37, is denied. The government's Motion for Protective Order, Doc. 19, and Defendant's Request to Strike Plaintiffs Objection to Request for Production of Documents and Motion for Protective Order, Doc. 25, are denied as moot.

(4) That the government's Motion to Strike Request for Admissions, Doc. 21, is granted and Defendant's Request for Admissions, Doc. 39, is stricken. Defendant's Motion to Strike Plaintiffs [sic] Motion and Request, Doc. 27, is denied as moot.

(5) That Defendant's document entitled "Judicial Notice of 'Uniform Judicial Notice of Foreign Law Act,'" Doc. 16, is denied.

(6) That Defendant's Motion to Dismiss, Doc. 38, is denied.

(7) That the government's Motion for Summary Judgment, Doc. 43, is granted and Defendant's Demand to Strike Motion for Summary Judgment, Doc. 54, is denied. The property held in the name of *Krautco Uninc., Moeco Uninc., Germco Uninc.,* and *See Corp.* is in fact the property of Jerome Schiefen and may be levied upon to satisfy his liabilities. Plaintiff shall prepare and submit to the Court a judgment and supporting materials calculating the amounts of principal and interest due and owing, together with costs and disbursements, as of this date.

(8) That the government's motions for sanctions in the form of attorneys fees, Doc. 17 and 21, are denied. Costs are awarded to the government and against Defendant Jerome T. Schiefen.

